David Wayne WILLIAMS, Respondent,

v.

Debra Kay REED (Williams), Appellant.

No. WD 56351.

Missouri Court of Appeals, Western District.

Dec. 14, 1999.

William D. Rotts, Jefferson City, for appellant.

Stephen Cotton Walker, Jefferson City, for respondent.

Before BRECKENRIDGE, C.J., SPINDEN and HOWARD, JJ.

BRECKENRIDGE, Chief Judge.

Debra Kay Williams, now Reed, appeals the trial court's judgment modifying custody and support of the child born of her marriage to David Wayne Williams. In the judgment of modification, the trial court transferred physical custody of the minor child, Mercedes Gayle Williams, from Ms. Reed to Mr. Williams, and ordered Ms. Williams to pay child support in the amount of $367.14 per month. Ms. Reed raises two points on appeal. In her first point, Ms. Reed claims that insufficient evidence supported the trial court's finding that a substantial and continuing change in circumstances had occurred which necessitated transferring physical custody of the minor child from Ms. Reed to Mr. Williams. In her second point, Ms. Reed claims that the trial court erred in failing to hold a proper hearing on her motion for change of judge and in denying her motion for change of judge. This court finds that Ms. Reed's second point is meritorious, as the trial judge's conduct and statements during the hearing on Ms.

Reed's motion for change of judge would give a reasonable person a factual basis to doubt the judge's ability to thereafter preside as a neutral arbiter over the motion to modify. Therefore, the judgment of the trial court is reversed and the cause is remanded for a new trial on the motion to modify in front of a different judge.

## Factual and Procedural Background

Ms. Reed and Mr. Williams were divorced on July 28, 1997. In their settlement agreement, Ms. Reed and Mr. Williams agreed to exercise joint legal and physical custody of Mercedes, who was born January 31, 1993, with Ms. Reed designated as Mercedes' primary physical custodian. The parties designated specific periods of visitation for Mr. Williams with Mercedes, and agreed that Mr. Williams would pay child support in the amount of $81.50 per month. The parties also agreed that they would keep each other informed regarding the names and addresses of any daycare providers for Mercedes. The trial court entered a judgment of dissolution in which it approved the settlement agreement and ordered the parties to abide by its terms.

On March 9, 1998, Mr. Williams filed a motion to modify child custody and support. In his motion, Mr. Williams alleged four substantial and continuing changed circumstances, which he claimed warranted modification of the judgment of dissolution. Three of Mr. Williams' alleged changed circumstances concerned Ms. Reed's homosexual relationship with Tracy Moore. Mr. Williams claimed that Ms. Reed was in a public, same-sex relationship with Ms. Moore which was detrimental to Mercedes' best interests. Mr. Williams also claimed that Ms. Moore had a history of violence with her same-sex partners, and such behavior was detrimental to Mercedes. Additionally, Mr. Williams claimed that when Mercedes resided with Ms. Reed, Mercedes was forced to sleep in a room with her 10–year–old step-brother while Ms. Reed and Ms.

Moore shared a bed. Mr. Williams' other alleged changed circumstance was that the daycare providers listed in the parties' separation agreement no longer provided care for Mercedes. Ms. Reed filed an answer denying Mr. Williams' allegations.

On July 21, 1998, three days prior to the trial on Mr. Williams' motion to modify, Ms. Reed filed a motion for change of venue and change of judge for cause pursuant to 51.05(d). In the motion for change of venue, Ms. Reed's attorney, Kylar Broadus, alleged that Mr. Williams, a Jefferson City police officer, had undue influence over the citizens of Cole County and had made threats to individuals involved in the proceeding. Because of Mr. Williams' influence in Cole County, Mr. Broadus asked that the case be transferred to Boone County. In the motion for change of judge, Mr. Broadus averred that Ms. Reed had just learned, on or about July 17, 1998, that the trial judge "is, about to or has recently become involved in a dissolution proceeding in which his soon to be ex-wife is involved in a same-sex relationship and child custody is an issue." Mr. Broadus claimed that the trial judge and his wife's alleged situation would make the judge unable to provide Ms. Reed with a fair hearing.

On July 24, 1998, prior to hearing evidence on Mr. Williams' motion to modify, the trial judge announced that he would hear evidence on Ms. Reed's motion for change of venue and change of judge. Mr. Broadus started by saying that the allegation regarding the judge's wife and the state of their marriage was based upon information Mr. Broadus received "through the grapevine." The judge then began questioning Mr. Broadus as to the source of and factual basis for the allegation. The judge relayed to the parties that he had discussed the motion with his wife prior to the hearing, and she was "out-

raged" about the allegation in the motion. When Mr. Broadus indicated that his client had told him about the judge's alleged marital situation, the trial judge called Ms. Reed to the stand, denied her request to consult with Mr. Broadus prior to taking the stand, and threatened to hold her in contempt of court if she did not do what the judge told her to do. Ms. Reed, under questioning by the trial court, indicated that she had merely asked Mr. Broadus to investigate information she had received about the judge's wife and their marriage. After telling Mr. Broadus he was personally insulted, the trial judge chastised Mr. Broadus for filing a baseless motion for change of judge and denied the motion for change of judge and change of venue.[1]

Both parties then presented evidence regarding Mr. Williams' motion to modify. After taking the case under advisement, the trial court modified the parties' judgment of dissolution by ordering, *inter alia*, that Mercedes' primary physical custody be transferred to Mr. Williams, and that Ms. Reed pay $367.14 per month as child support. Ms. Reed subsequently filed this appeal.

Because it is dispositive of Ms. Reed's appeal, this court will address only Ms. Reed's second point. In her second point, Ms. Reed claims that the trial judge failed to conduct a proper hearing on the motion for change of judge in that the trial judge testified regarding the allegation and considered improper evidence from the judge's own spouse, and therefore should have disqualified himself from hearing the motion for change of judge. Additionally, Ms. Reed claims that the trial judge's conduct during the hearing on the motion for change of judge indicated that he would be unable to give Ms. Reed a fair hearing on the motion to modify, and therefore the trial judge should have granted the motion for change of judge.

---

1. No evidence was heard and no discussion was had regarding the allegations contained in Ms. Reed's request for change of venue. Because Ms. Reed does not appeal the denial of her request for change of venue, this court will not address the merits of the motion for change of venue on appeal.

## Standard of Review

■■■ In reviewing the trial court's denial of a motion for change of judge, the appellate court presumes that a trial judge will not preside over a proceeding in which the judge cannot be impartial. *Bruflat v. Mister Guy, Inc.*, 933 S.W.2d 829, 836 (Mo.App.1996). Therefore, this court will affirm the trial court's denial of a motion for change of judge unless the denial constitutes an abuse of discretion. *Robin Farms, Inc. v. Bartholome*, 989 S.W.2d 238, 245 (Mo.App.1999).

Ms. Reed made a motion for change of judge for cause pursuant to Rule 51.05(d). While Rule 51.05(d) does not set forth what qualifies as "cause," § 476.180, RSMo 1994 and Rule 2, Canon 3 D of the Code of Judicial Conduct do. *Id.* Section 476.180, RSMo 1994, provides that no judge "who is interested in any suit or related to either party, or who shall have been of counsel in any suit or proceeding pending before him," shall preside over a proceeding without the express written consent of the parties. Because none of the particular circumstances listed in the statute apply, this court turns to Rule 2, Canon 3 D(1) of the Code of Judicial Conduct (1998) for guidance.[2] *Id.* This canon provides as follows:

(1) A judge should recuse in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where the judge:

(a) has a personal bias or prejudice concerning the proceeding;

(b) served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(c) knows that the judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the household has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(d) or a spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iii) is to the judge's knowledge likely to be a material witness in the proceeding[.]

Rule 2, Canon 3 D(1). When the judge does not recuse, as in this case, this court has only the record from which to determine whether the proceeding was tainted with bias or prejudice. *State v. Jones*, 979 S.W.2d 171, 178 (Mo. banc 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 886, 142 L.Ed.2d 785 (1999).

### Rule 2, Canon 3 D(1)(d)(iii) Specifically Required

Recusal on the Motion for
Change of Judge

■■■ Ms. Reed first claims that the record indicates the judge should have disqualified himself from hearing the motion for change of judge. Applying the standards of the canon, the record in this case indicates that the trial judge's recusal on the motion for change of judge was specifically required under Rule 2, Canon 3 D(1)(d)(iii), in that the judge's spouse was, to the judge's knowledge, likely to be a material witness in the proceeding. Prior to Mr. Broadus presenting any evidence on the motion for change of judge, the trial judge told the parties that he had called

**2.** Rule 2, Canon 3 was amended in 1999. The amendment renumbered the subparts, and the subpart on recusal is now paragraph "E." As the amended version was not in effect at the time of the hearing on the motion for change of judge in this case, this court will continue to refer to the 1998 version of the canon.

his wife the morning of the hearing on the motion and read it to her "to see if there was something she was withholding from [him]." The judge relayed that his wife did not think the motion was humorous and, in fact, she was "outraged" by such a "scandalous" allegation.

This court discussed a judge's disqualification based upon communication from the judge's spouse in *Berry ' v. Berry,* 654 S.W.2d 155 (Mo.App.1983). In *Berry,* this court upheld the trial court's denial of a disqualification motion without an evidentiary hearing on the basis that it was neither alleged nor proved that the judge's spouse had actually communicated any outside information to the judge. *Id.* at 158. This court held that "[t]he mere opportunity to have received outside-the-courtroom potentially contaminating information or influence is certainly no grounds for disqualification of a judge." *Id.* at 159.

In this case, the trial judge went beyond having a "mere opportunity" to obtain outside-the-courtroom information from his spouse. The trial judge actually telephoned his wife and discussed the allegation in the motion with her prior to the hearing. Although neither party had called the judge's wife as a witness in the hearing on the disqualification motion, the trial judge undertook to make his wife a material witness by discussing the veracity of the allegation in the motion with his wife prior to the hearing and, as indicated by the judge's statements, by relying on his wife's outside-the-record testimony in ruling on the motion. As a result of the trial judge's making his wife a material witness in the hearing on the motion for change of judge, Rule 2, Canon 3 D(1)(d)(iii) specifically required the judge to disqualify himself from ruling on the motion for change of judge. The judge's failure to disqualify himself from ruling on the motion for change was not reversible error, however. Ms. Reed suffered no prejudice from the trial judge ruling on the motion for change of judge because the record is clear that Ms. Reed's attorney had no evidence to present in support of the motion and, therefore, the motion for change of judge would have properly been denied by any judge who had heard it.

## Appearance of Partiality Required Recusal on the Motion to Modify

Having found that the trial judge's recusal was required on the motion for change of judge but that his failure to do so was not reversible error, this court now turns to Ms. Reed's claim that the trial judge's recusal was required on the motion to modify. None of the specific instances delineated in Rule 2, Canon 3 D(1) apply to require the judge's recusal on the motion to modify. The canon, however, does not limit the judge's duty to recuse from a proceeding to only those specific instances. *Robin Farms,* 989 S.W.2d at 246. Rather, Rule 2, Canon 3 D(1) provides that the judge has a duty to recuse "in a proceeding in which the judge's impartiality might reasonably be questioned, *including but not limited to "* the instances delineated. *Id.* (emphasis added). The determination of whether the judge's recusal was required in a factual situation outside of one of the specific instances mentioned in the statute or rule is to be made on a case-by-case basis. *Id.*

To constitute a disqualifying bias, the bias "must come from an extrajudicial source that results in the judge forming an opinion on the merits based on something other than what the judge has learned from participation in the case." *State v. Jones,* 979 S.W.2d 171, 178 (Mo. banc 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 886, 142 L.Ed.2d 785 (1999). The judge's bias or prejudice must be personal, rather than judicial, and must be "to such an extent so as to evince a fixed prejudgment and to preclude a fair weighing of the evidence." *State ex rel. Wesolich v. Goeke,* 794 S.W.2d 692, 697–98 (Mo.App. 1990). Because litigants who present their disputes to a Missouri court are entitled to a trial which is not only fair and impartial,

but which also *appears* fair and impartial, *id.* at 695, the test for recusal is not whether the court is actually biased or prejudiced. *Grissom v. Grissom,* 886 S.W.2d 47, 56 (Mo.App.1994). Rather, the test for recusal when the judge's impartiality is challenged is "'whether a reasonable person would have a factual basis to find an appearance of impropriety and thereby doubt the impartiality of the court.'" *Jones,* 979 S.W.2d at 178 (quoting *State v. Smulls,* 935 S.W.2d 9, 17 (Mo. banc 1996)).

Ms. Reed claims that the trial judge's conduct during the hearing on the motion for change of judge created an appearance of impropriety which would cause a reasonable person to doubt the judge's impartiality in presiding over the motion to modify. To consider whether there is any actual bias or even the appearance of impropriety, we again turn to the record of the hearing on the motion for change of judge. The trial judge began the hearing by questioning Mr. Broadus about the factual basis for the allegation that the judge was in the process of getting divorced and that his wife was involved in a same-sex relationship. Mr. Broadus responded by saying that he heard the allegation from "an individual who claimed to have knowledge," but Mr. Broadus did not name the individual.

After telling the parties what he and his wife thought about the allegation, the trial court continued to ask Mr. Broadus where he had received the information. Mr. Broadus continued to respond that he had heard the information "elsewhere" and "through a couple of phone calls." Mr. Broadus then told the court that he could not name from whom he received the information because it would violate attorney/client privilege, as his client had told him about the allegation.

Hearing that the information about his alleged impending divorce and his wife's alleged same-sex relationship had come from Ms. Reed, the trial judge ordered Ms. Reed to the stand to testify. When Ms. Reed asked to consult with Mr. Broadus prior to taking the stand, the trial court told her she could not. The judge then threatened to hold Ms. Reed in contempt of court if she did not do what the court told her to do.

The trial judge proceeded to ask Ms. Reed where she received the information about his wife and the state of their marriage. Ms. Reed replied that she had heard the judge was possibly involved in a divorce and that he was requesting custody of his children. When the judge asked Ms. Reed specifically whether she had told Mr. Broadus about his wife's alleged same-sex relationship, Ms. Reed said that she had only asked Mr. Broadus to investigate the possibility that the judge's wife was involved in a same-sex relationship.

After the trial judge finished questioning Ms. Reed, he then inquired of Mr. Broadus what the source of his allegation was. Mr. Broadus told the court that his understanding of his client's communication to him was erroneous, because he thought Ms. Reed told him that she had heard the judge's wife was actually involved in a same-sex relationship. The trial judge chastised Mr. Broadus for filing a groundless motion, and told Mr. Broadus that he was personally insulted by the motion and the motion caused him to have concern about Mr. Broadus's abilities. Because he believed Mr. Broadus fabricated the allegation contained in the motion for change of judge, the judge denied the motion for change of venue and change of judge.

■ It is apparent from the record that the judge found offensive the allegation that he was, or was about to be, a party to a dissolution proceeding, and his soon-to-be ex-wife was involved in a homosexual relationship. The trial judge's statement that he considered the allegation offensive, if that were all that he had done, would not have required the judge's recusal. A judge's mere possession of views regarding the conduct of a party or the party's counsel does not constitute dis-

qualifying prejudice. *Wesolich,* 794 S.W.2d at 697.

Nor would the trial judge's remarks questioning Mr. Broadus's ability as an attorney by themselves have required the judge's recusal. A judge's comments alone, "even those that are critical or even hostile to a party, do not support a claim of bias and partiality." *Haynes v. State,* 937 S.W.2d 199, 204 (Mo. banc 1996). Rather, the judge's comments must be reviewed "in the context of all statements of the judge and of the circumstances before the trial judge when the statements were made" to determine whether the negative comments created an appearance of impropriety which would cause a reasonable person to doubt the judge's impartiality. *Id.*

From the context of the record, however, the trial judge went beyond merely possessing the view that the allegation was offensive, and he went beyond expressing his displeasure at the making of the allegation. While a trial judge is free to express displeasure with the attorneys and parties involved, this displeasure must not affect the trial judge's decisions. *Grissom,* 886 S.W.2d 47. The feelings of personal insult the judge understandably possessed appear to have affected the way in which he conducted the hearing on the motion for change of judge to such a degree that a reasonable person would doubt the judge's impartiality.

It was clear very early in the hearing on the motion for change of judge that the motion was without evidentiary support. Nevertheless, the judge kept demanding that Mr. Broadus provide him with the source of the allegation. The judge also called Ms. Reed to the stand, denied her request to consult with Mr. Broadus prior to taking the stand, and threatened to hold her in contempt. The judge took these actions despite the fact that up to that point, Mr. Broadus had declined to advise the court of any evidentiary basis for the motion. Mr. Broadus had refused to name the source of the allegation, or even be specific about the factual basis for the allegation. His responses to the trial judge's questions had been that he had heard the allegation "through the grapevine" from "an individual with knowledge" and "through a couple of telephone calls to [his] office." There was no reason for the judge to continue asking Mr. Broadus to name the person who gave him the information about the judge's wife and the state of the judge's marriage, nor was there any reason to call Ms. Reed to the stand to inquire whether she was the one who gave Mr. Broadus the information. The trial judge should have denied the motion for change of judge at that time, instead of continuing to compel answers which were not forthcoming. The trial judge's reaction to a clearly unsupported allegation would give a reasonable person a factual basis to doubt his ability to thereafter preside as a neutral arbiter over the motion to modify.

A finding that the judge's conduct during the hearing on the motion for change of judge required his recusal on the motion to modify does not, as Mr. Williams claims, encourage parties to make spurious allegations about a judge and claim error when the trial judge fails to recuse. The *allegation* in the motion for change of judge did not create the basis for disqualification in this case, the judge's *reaction* to it did. As demonstrated by the judge's statements at the hearing, he reacted the way he did because he was personally insulted and his wife was outraged by the circulation of a "scandalous" rumor. The judge's reaction to the allegation created the appearance of impropriety and required his recusal on the motion to modify.

### Conclusion

Because the trial judge made his wife a material witness to the motion for change of judge, Rule 2, Canon 3 D(1)(d)(iii) specifically disqualified him from hearing the motion for change of judge. The trial judge's failure to recuse himself from hearing the motion for change of judge was not

prejudicial error, as the record clearly indicates that Ms. Reed's attorney had no evidence to present in support of the motion for change of judge and the motion would have been denied regardless of who had heard it. The judge's conduct during the hearing on the motion for change of judge did, however, create the appearance of impropriety which would cause a reasonable person to doubt his ability to preside over the motion to modify as an impartial arbiter. Therefore, this court finds that the trial judge should have recused himself from hearing the motion to modify. The trial court's judgment on the motion to modify is reversed, and the cause is remanded for a new trial before a different judge.

All concur.